**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:19-cv-00055-MR**

| | |
|---|---|
| **JONATHAN NICHOLS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **MARILYN GAMEWELL, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendants' Motions for

Summary Judgment [Docs. 48, 60], Defendant Gamewell's Motion to Seal

[Doc. 55]; and Defendants Fox and Harris' Motion for Extension of Time

[Doc. 59].

## I.    PROCEDURAL BACKGROUND

Pro se Plaintiff Jonathan Nichols ("Plaintiff") was formerly a prisoner of

the State of North Carolina.  Plaintiff was recently released from prison.  [See

Doc. 64].  Plaintiff filed a Complaint on May 8, 2019, pursuant to 42 U.S.C.

§ 1983, asserting claims of deliberate indifference to a serious medical need

against Alexander Correctional Institution ("Alexander") employees Nurse

Practitioner Marilyn Gamewell, Nurse Renee Harris, and Nurse Christine Fox

related to treatment of Plaintiff's sickle cell anemia at Alexander.[1]  For injuries, Plaintiff claims that he has "been living in constant physical agony for two years with the added fear of 'sudden death' due to Defendants['] refusal to treat me!!"  [Doc. 1 at 10 (emphasis in original)].  Plaintiff seeks monetary damages and injunctive relief, including an order "instructing Defendants to provide 'proper and adequate' treatment" as directed by Plaintiff's former doctor.  [Id. at 10].

Defendant Gamewell moved to dismiss Plaintiff's Complaint for failure to state claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Doc. 20].  The Court denied this motion, finding that Plaintiff did allege an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs.  [Doc. 40].

All Defendants have now moved for summary judgment.  [Docs. 48, 60].  In support of her summary judgment motion, Defendant Gamewell submitted a memorandum, her responses to Plaintiff's discovery requests, her own Affidavit, Plaintiff's Offender Information Report, Plaintiff's external movement log, and 3,557 pages of Plaintiff's medical record.  [Docs. 50, 50-1 through 50-7, and 51-54].  Defendant Gamewell also moved to seal

---

[1] Defendant North Carolina Department of Public Safety (NCDPS) Grievance Officer Wakenda Greene was dismissed on initial review for the reasons stated in the Court's Order.  [Doc. 9].

2

Plaintiff's medical record submitted in support of her motion. [Doc. 55]. Defendants Fox and Harris submitted a memorandum and their own Affidavits in support of their summary judgment motion.[2] [Docs. 61, 62-1, 62-2].

The Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 63]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. at 3 (citing Fed. R. Civ. P. 56(c)(1)(a)]. The Court further advised that, "[i]f Plaintiff has any evidence to offer to show that there is a genuine issue for trial," "he must now present it to this Court in a form which would otherwise be admissible at trial,

---

[2] Defendants Fox and Harris timely moved for an extension of the deadline to file their summary judgment motion, [Doc. 59], which the Court will grant here.

3

_i.e.,_ in the form of affidavits or unsworn declarations." [Id. at 2 (citing Fed. R. Civ. P. 56(c)(4))]. Plaintiff did not respond to Defendants' summary judgment motions.[3] Plaintiff's Complaint, however, was submitted under penalty of perjury. The allegations therein made on Plaintiff's personal knowledge, therefore, are to be considered for their evidentiary value here.[4]

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[3] The Court's Roseboro Order was returned as undeliverable because Plaintiff had been released from custody but had not (and still has not) notified the Court of his new address. [See Doc. 64].

[4] The Fourth Circuit recently made clear that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a

'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380. "[I]n determining whether a prisoner has received adequate medical treatment, the federal court is entitled to rely on the physician's affidavit and prison medical records kept in the ordinary course of operation." <u>Stokes v. Hurdle</u>, 393 F. Supp. 757, 762-63 (4th Cir. 1975), <u>affirmed</u>, 535 F.2d 1250 (4th Cir. 1976) (citations omitted). "In short, if it appears from the record that the prison medical authorities have made a sincere and reasonable effort to handle the prisoner's medical problems, the constitutional requirements have been met." <u>Id.</u> at 763.

6

## III.    FACTUAL BACKGROUND

The Plaintiff in his verified Complaint has alleged as follows.   After Plaintiff arrived at Alexander in May 2017, Defendants Gamewell and Harris interfered with Plaintiff's medications and scheduled treatments previously prescribed by Plaintiff's physician, Dr. Osunkwo. [Doc. 1 at 3].  Dr. Osunkwo, a specialist in sickle cell disease and the Medical Director of the sickle cell disease program at the Levine Cancer Institute, had been treating Plaintiff for sickle cell anemia, a life-threatening disease, for several years and knew "better than anyone" what treatments Plaintiff needed.   [Id. at 3-4, 6]. Defendant Gamewell put Plaintiff's life in "grave danger" by refusing to follow the treatment plan established by Dr. Osunkwo.  [Id. at 4].  Plaintiff received red blood cell transfusions only twice in the two years before filing his Complaint, although he should have been receiving them every month.  [Id.]. Furthermore, Defendants Gamewell and Harris refused to provide Plaintiff with prescribed medications that are "vital to [his] livelihood."  [Id. at 5].

These allegations constitute Plaintiff's forecast of evidence only to the extent they are based on personal knowledge.  However, the allegations regarding Plaintiff's medical history and treatment are plainly contradicted by his undisputed medical record which is before the Court.   The Court,

therefore, cannot adopt Plaintiff's allegations for purposes of this motion. See Scott, 550 U.S. at 380.

The relevant forecast of evidence, taken in the light most favorable to the Plaintiff, shows the following. From May 2017 to August 2019, Plaintiff was incarcerated at Alexander. [Doc. 50-5 at 1]. Defendant Gamewell is Nurse Practitioner licensed to practice in North Carolina. [Doc. 50-3 at ¶ 3: Gamewell Aff.]. Gamewell is an NCDPS employee currently working as a Nurse Practitioner at Alexander. [Doc. 50-3 at ¶ 4]. As a Nurse Practitioner, Gamewell provides acute and chronic medical care for Alexander's inmates and supervises medical staff. [Id. at ¶ 5]. Defendant Gamewell directly treated or supervised treatment of Plaintiff multiple times during his incarceration at Alexander. [Id. at ¶ 6]. Defendant Fox is a Nurse Supervisor at Alexander, [Doc. 62-1 at ¶ 6: Fox Aff.], and Defendant Harris is a Charge Nurse at Alexander, [Doc. 62-2 at ¶ 4: Harris Aff.]. Defendants Fox and Harris held these positions at the relevant times. [Doc. 62-1 at ¶ 6; Doc. 62-2 at ¶ 4].

Plaintiff suffers from sickle cell disease. [Doc. 51 at 1]. Sickle cell disease is a genetic blood disorder that leads to progressive damage to various organs, a shortened life span, and recurrent intermittent unpredictable bouts of acute pain ("pain crisis") that leads to progressive and

persistent chronic pain. [Doc. 51 at 1]. While at Alexander, Plaintiff received outside specialist care for this condition, initially from the Levine Cancer Institute and later from the UNC Hematology Clinic. [See Doc. 51 at 1-4; Doc. 52 at 353]. Specifically, Plaintiff received apheresis, or red blood cell exchange transfusions, to treat his sickle cell anemia. To facilitate these transfusions, Plaintiff had central venous access ports that had to be flushed once per month. [Doc. 51 at 2-3].

Dr. Osunkwo began treating Plaintiff's sickle cell disease in January 2015. [Doc. 51 at 1]. In March 2015, Plaintiff started monthly red blood cell exchange transfusions under Dr. Osunkwo's care. [Doc. 51 at 3]. On June 15, 2017, Plaintiff complained to Defendant Gamewell that he wanted a higher dose of his pain medication, Tramadol. [Doc. 51 at 307]. Defendant Gamewell advised Plaintiff that his dose had just been increased the previous month to the highest allowed dose. [Id.]. At this time, Defendant Gamewell also advised Plaintiff that a recent Utilization Review (UR) Request[5] for exchange transfusions at the Levine Cancer Institute had been

---

[5] A Utilization Review (UR) Request must be submitted by the facility providers for any service that requires precertification or prior authorization. Precertification and authorization are necessary to confirm eligibility for and obtaining an authorization number prior to scheduled inpatient admissions and "selected ambulatory procedures and specialty consult services." [NCDPS Health Services Policy & Procedure Manual, Utilization Management Policies].

approved.  Plaintiff, however, was angry that his pain medication would not be increased.  Plaintiff reportedly told Defendant Gamewell that he would not allow anyone to flush his port after that day.  Defendant Gamewell advised Plaintiff that this may cause the port to clog.  Plaintiff replied, "whatever," and left the room.  [Id.].

On June 26, 2017, Dr. Osunkwo paused Plaintiff's transfusions until Plaintiff could return for a consultation in August 2017. [Doc. 51 at 319]. Defendant Gamewell, therefore, recommended that a UR Request be entered for Plaintiff to return to Dr. Osunkwo in August 2017.  [Doc. 51 at 325].  On August 4, 2017, Plaintiff returned to Dr. Osunkwo.  [Doc. 51 at 466]. At that time, Dr. Osunkwo recommended resumption of Plaintiff's monthly transfusions and certain changes to Plaintiff's medications.  [Doc. 51 at 469-71].  Thereafter, Defendant Gamewell entered the UR Requests for monthly transfusions and the orders for the medications and other treatments as directed by Dr. Osunkwo.  [Doc. 51 at 527-29, 537-39].  Plaintiff received transfusions every month between August 2017 to February 2018 in accordance with Dr. Osunkwo's recommendations.  [Doc. 50-3 at ¶ 8].

On October 5, 2017, Plaintiff was hospitalized after complaining of severe leg pain.  [Doc. 51 at 719, 723, 732; see Doc. 52 at 435].  Defendant Gamewell advised that Plaintiff be taken to the nearest emergency room for

treatment.  [Doc. 51 at 719].  Defendant Gamewell also entered a UR Request for this treatment.  [Id.].  Plaintiff was admitted to Carolinas Medical Center in Charlotte, North Carolina, where he was diagnosed with a sickle cell pain crisis.  He was discharged on October 19, 2017.  [See Doc. 51 at 732-793].  During this admission, Plaintiff received IV pain medications, consultations with various specialists, numerous imaging studies, and physical therapy.  [Doc. 51 at 732-793].

Plaintiff was again admitted Carolinas Medical Center from February 1, 2018 through February 6, 2018, for a pain crisis that started during his monthly exchange transfusion with Dr. Osunkwo.  [Doc. 52 at 309-311, 436, 590].  On February 21, 2018, after this most recent hospitalization, Dr. Marta Kalinski, an NCDPS non-defendant physician, referred Plaintiff to the UNC Hematology Clinic to review Plaintiff's treatment plan.  [Doc. 50-3 at ¶ 9; Doc. 52 at 353; see Doc. 52 at 590].  Dr. Kalinski noted that, despite complex and comprehensive treatment at the Levine Cancer Institute, Plaintiff's condition was not improving, and he was, in fact, becoming more symptomatic.  [Doc. 52 at 353].  Dr. Kalinski noted that Plaintiff had frequent episodes of sickle cell crisis with severe pain exacerbations requiring hospitalizations and treatment with very high doses of narcotics, as well as frequent complications and subsequent hospitalizations associated with his exchange transfusions.

11

[Id.].  The medical record also shows that there was a "security concern" associated with Plaintiff's transport to the Levine Cancer Institute, including Plaintiff's threats to transport officers and manipulation of Levine Cancer Institute staff.  [See Doc. 52 at 435, 590].  Defendant Fox recalls that on or around February 21, 2018, Dr. Kalinski told her that Alexander's Assistant Director of Nursing received a call from custody staff stating that Plaintiff was a security risk and that it was not safe for custody staff or the general public for Plaintiff to continue to receive care through the Levine Cancer Institute. [Doc. 62-1 at ¶ 8(f)].  According to Defendant Fox, Dr. Kalinski requested that Plaintiff's care be transferred to the UNC Hematology Clinic to address the security issue and the "method and means of medical care."  [Doc. 62-1 at ¶ 8(h)].

On April 2, 2018, after Plaintiff's referral to UNC Hematology, Plaintiff refused to have his port flushed.  [Doc. 52 at 418].  On April 20, 2018, Plaintiff was first seen at the UNC Hematology Clinic.  [Doc. 52 at 435].  Plaintiff had previously been a patient of the UNC Hematology Clinic in 2013 and January 2014.  [Doc. 52 at 435].  In April 2018, Plaintiff's UNC physician, Dr. Toledo-Nieves, noted that, according to UNC's January 2014 treatment record for Plaintiff, Plaintiff had had a good clinical response to treatment with hydroxyurea, which was marked by a decrease in the frequency of painful

crises. [Doc. 52 at 435]. Dr. Toledo-Nieves noted his plan to consult with Dr. Osunkwo and recommend resumption of hydroxyurea treatment versus exchange transfusions.[6] [Doc. 52 at 435-36]. On August 29 and September 4, 2018, Plaintiff failed to present for bloodwork appointments at Alexander. [Doc. 52 at 651, 661].

On September 28, 2018, Plaintiff experienced another sickle cell pain crisis and was transported to the emergency room at the Catawba Valley Medica Center (CVMC). [Doc. 52 at 725]. He was admitted for treatment after his pain was not adequately managed in the emergency room. [Doc. 52 at 722-23]. Plaintiff was discharged in good condition on October 3, 2018. [See Doc. 52 at 730]. Plaintiff was again hospitalized at CVMC from October 22, 2018 to October 25, 2018 for pain management related to another sickle cell pain crisis. [See Doc. 52 at 804]. Plaintiff attended a follow up appointment at UNC Hematology on October 26, 2018 and was ordered to return for follow up care in three months. [Doc. 52 at 760-61, 803-4].

Plaintiff then returned to UNC Hematology for a follow up visit on January 25, 2019. [Doc. 53 at 110-121]. Plaintiff then returned to UNC

---

[6] Although Defendant Gamewell attests that Plaintiff received exchange transfusions at UNC Hematology in April and June of 2018, [Doc. 50-3 at ¶ 9], the medical record does not support this statement. Rather, a record from a January 25, 2019 visit to UNC Hematology reflects that Plaintiff last received a transfusion in February 2018 while under Dr. Osunkwo's care. [See Doc. 53 at 113].

Hematology on April 26, 2019 for his three-month follow up. [Doc. 53 at 284]. Plaintiff's physician noted that, "[Plaintiff] is frustrated that the [hydroxyurea] isn't helping and we discussed his pain patterns and he actually hasn't had any crisis episodes" recently. [Doc. 53 at 286].

Plaintiff filed his Complaint in this matter on May 8, 2019. [Doc. 1]. On June 13, 2019, Plaintiff was seen at CVMC for further pain management and treatment, but he was discharged the same day and his lab results were noted to be "reassuring." [Doc. 52 at 376-379]. On July 1, 2019, Plaintiff again visited CVMC for pain treatment. He was released from care after only a few hours. [Doc. 53 at 420-24]. On August 30, 2019, Plaintiff was transferred from Alexander to Mountain View Correctional Institution. [Doc. 50-5 at 1]. Plaintiff returned to UNC Hematology for follow up on or about September 12, 2019. [See Doc. 52 at 602-609]. According to the medical record before the Court, Plaintiff's providers at UNC Hematology did not recommend or perform an exchange transfusion to treat Plaintiff's sickle cell disease at any time.

At all times relevant to this matter, Defendant Gamewell was not involved in coordinating Plaintiff's sickle cell disease care with the UNC Hematology Clinic or with specialists at the Levine Cancer Institute. [Doc. 50-3 at ¶ 10]. Defendant Gamewell never ignored, refused to implement, or

failed to fulfill an outside specialist's prescribed course of treatment for Plaintiff. [Doc. 50-3 at ¶ 11]. Rather, she was responsive to the specialists' orders and recommendations and to Plaintiff's complaints of pain. [Doc. 51 at 307, 337, 390, 421, 453, 461, 527-29, 537-37]. Moreover, Defendant Gamewell was never aware of Plaintiff not being scheduled for or not receiving care approved by and prescribed by his outside specialists for his sickle cell disease. [Doc. 50-3 at ¶ 13]. Plaintiff, on the other hand, refused care necessary to facilitate his transfusions on multiple occasions, including refusing to allow nursing staff or other healthcare providers to flush his venous port. [Doc. 50-3 at ¶ 14]. Plaintiff also refused analgesic pain medications, blood pressure medications, and other more conservative methods for treating his pain. [Doc. 50-3 at ¶ 15].

As a Nurse Supervisor, Defendant Fox was not involved with Plaintiff's direct patient care. [Doc. 62-1 at ¶ 8(a)]. Defendant Fox, however, is very familiar with Plaintiff because he often submitted his medical concerns through the grievance process. [Doc. 62-1 at ¶ 8(a)]. As Nurse Supervisor, Defendant Fox was responsible for responding to all step one medical grievances. [Doc. 62-1 at ¶ 8(b)]. Defendant Fox was also familiar with the Plaintiff because Plaintiff had frequent emergency room visits and, as Nurse

Supervisor, Fox reviewed the reports generated from these visits. [Doc. 62-1 at ¶ 8(c)].

Defendant Harris has few, if any, specific recollections of direct treatment of Plaintiff. [Doc. 62-2 at ¶ 6(a)]. Defendant Harris was not aware at any time during Plaintiff's incarceration at Alexander that he was receiving transfusions. [Doc. 6-2 at ¶ 6(b)]. Defendant Harris was not involved in the decision to transfer Plaintiff's care to UNC Hematology. [Doc. 62-2 at ¶ 8(f)]. As nurses, Defendants Fox and Harris could not prescribe medications or treat inmates, including Plaintiff, without a provider's order. [Doc. 62-1 at ¶ 8(e); Doc. 62-2 at ¶ 8(e)].

This matter is now ripe for disposition.

## IV.   DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need

for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). Further, the constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983

claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

To succeed on a claim against Defendants under the Eighth Amendment, Plaintiff must show a deliberate indifference to Plaintiff's serious medical needs. <u>Estelle</u>, 429 U.S. at 104. To establish such indifference, the "treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness." <u>Miltier</u>, 896 F.2d at 851. Absent exceptional circumstances, a disagreement between a prisoner and a physician over the prisoner's proper medical care is not grounds for a § 1983 claim. <u>Wright</u>, 766 F.2d at 849.

Here, the forecast of evidence shows, at best, a disagreement between Plaintiff and Dr. Kalinski, a non-defendant, regarding whether Plaintiff's care should have been transferred to the UNC Hematology Clinic. <u>See</u> <u>Wright</u>, 766 F.2d at 849. The forecast of evidence reflects that Plaintiff's NCDPS providers, including Defendant Gamewell, provided and facilitated care in accordance with the orders and recommendations of Plaintiff's outside specialists and that Defendants Fox and Harris were not involved in any relevant direct patient care of Plaintiff. Moreover, the forecast of evidence does not suggest that any Defendant interfered with the treatment ordered

by Plaintiff's specialists.   The forecast of evidence also shows that Defendants had no influence over the transfer of Plaintiff's sickle cell disease care from Dr. Osunkwo to the UNC Hematology Clinic or what care was ordered by Plaintiff's providers at the UNC Hematology Clinic.   Finally, the forecast of evidence shows that the decision to transfer Plaintiff's care was due, at least in part, to security concerns created by Plaintiff himself.

In sum, the total forecast of evidence (which includes 3,557 pages of medical records) does not support Plaintiff's assertion that Defendants acted with "deliberate indifference" to Plaintiff's serious medical needs.   See Estelle, 429 U.S. at 194, 97 S. Ct. at 285; Overman v. Wang, 801 Fed. App'x 109, 111-12 (4th Cir. 2020) (affirming judgment on bench trial finding prison doctor's treatment of prisoner's knee injury was reasonable given the prisoner's symptoms despite failure to provide other, more advanced available treatment).   Rather, the record plainly supports that "the prison medical authorities [ ] made a sincere and reasonable effort to handle the prisoner's medical problems."   Stokes, 393 F. Supp. at 763.   The forecast of evidence on Plaintiff's claims against Defendants, therefore, is insufficient to go to a jury on a § 1983 claim under the Eighth Amendment.   Summary

judgment is, therefore, appropriate.[7]

Additionally, Defendants are entitled to qualified immunity. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because Plaintiff has failed to forecast sufficient evidence that Defendants' conduct violated any constitutional right, they are entitled to qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 232 (2009).

## IV. Defendant Gamewell's Motion to Seal

Defendant Gamewell, through counsel, moves the Court to seal the Plaintiff's medical records she submitted in support of her summary judgment motion, "to comply with the Health Insurance Portability and Accountability Act of 1996" and to protect Plaintiff's individually identifiable health information. [Doc. 55]. Defendant Gamewell filed these documents under seal. [See Docs. 51-54].

---

[7] Plaintiff's claim for injunctive relief is also moot and will be dismissed because Plaintiff is no longer in custody. Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Defendant Gamewell's motion. Defendant filed her motion in February 2021, and it has been accessible through the Court's electronic case filing system since that time. Moreover, the public's right of access to Plaintiff's medical record is substantially outweighed by the Plaintiff's competing interest in protecting the details of such information. Having considered less drastic alternatives to sealing these particular documents, the Court concludes that sealing these records is necessary to protect the Plaintiff's privacy interests. As such, the Court will grant Defendant Gamewell's motion to seal and order that Plaintiff's medical record remain under seal.

## V.    CONCLUSION

For all the foregoing reasons, Defendants' motions for summary judgment, Defendant Gamewell's motion to seal, and Defendants Fox and

Harris' motion for extension of time are granted.

## ORDER

**IT IS, THEREFORE, ORDERED** Defendants' Motions for Summary Judgment [Docs. 48, 60] are **GRANTED**; and this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant Gamewell's Motion to Seal [Doc. 55] is **GRANTED** and the documents filed at Docket Numbers 51-54 shall remain sealed.

**IT IS FURTHER ORDERED** that Defendants' Fox and Harris' Motion for Extension of Time [Doc. 59] is **GRANTED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: August 2, 2021

Martin Reidinger
Chief United States District Judge